UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICH PRODUCTS CORPORATION,

                              Plaintiff,

         v.                                                    **DECISION AND ORDER**
                                                               13-CV-30S

DAVID BLUEMKE and
DARIFAIR FOODS, INC.,

                              Defendants.

## I.  INTRODUCTION

Plaintiff Rich Products Corporation commenced this diversity action in January 2013 seeking damages and injunctive relief for, among other things, intentional interference with contract and unfair competition allegedly resulting from Defendant  Darifair Foods, Inc. ("Darifair") employing Plaintiff's former employee, Defendant David Bluemke.  Presently before this Court are Plaintiff's motion for partial summary judgment on its first and fifth causes of action and Defendants' cross-motion for summary judgment dismissing the Complaint. The Court finds these matters fully briefed and oral argument unnecessary. For the reasons that follow, Plaintiff's motion is denied and Defendants' cross-motion is granted.

## II. BACKGROUND

In 1993, Defendant Bluemke was an investor and owner of Ultra Cream Products, LLC, a joint venture between Cream Products, a company owned by Bluemke's family, and Ultra Products, LLC, for the manufacture, promotion, and marketing of aseptic dairy and nondairy coffee creamers. (Defs' Statement of Facts ¶¶ 4, 6, Docket No. 65 ("Defs' Stmt"), Pl's Responding Statement of Facts ¶¶ 4, 6 ("Pl's Res'g Stmt").)  Cream Products was

acquired by  Morningstar Foods, Inc. ("Morningstar"), in 1996, at which time Bluemke became a consultant for the latter corporation.  (Defs' Stmt ¶ 7; Pl's Res'g Stmt ¶ 7.) Plaintiff entered into a licensing agreement with Morningstar in September 1998 which granted Plaintiff the right to utilize Morningstar's technology, intellectual property rights, and confidential information.  (Defs' Stmt ¶ 8; Pl's Res'g Stmt ¶ 8.)

Plaintiff hired Defendant David Bluemke in November 1998, at which time Bluemke signed an agreement that contained the following confidentiality provision:

> 6.    I recognize that in my position with [Plaintiff], I will be exposed to information which Rich considers to be confidential and proprietary. To protect [Plaintiff's] interest in this information, I agree as follows:
>
>    (a)    All knowledge and information which I have obtained, or which I may hereafter obtain, during the course of my employment with [Plaintiff], with respect to the business, equipment, products, methods of manufacture, specifications, or research and development projects of [Plaintiff], are secret and confidential.
>
>    (b)    I will not, either directly or indirectly, during my employment or at any time after my employment with Rich, use for myself or other or divulge or convey to others any confidential information, knowledge, or data of [Plaintiff] or that of third parties obtained by me during the period of employment with [Plaintiff].

(Compl Ex A, Docket No. 1 at 21; Defs' Stmt ¶ 11; Pl's Res'g Stmt ¶ 11.)

In June 2003, while Defendant Bluemke was still employed by Plaintiff, Plaintiff entered into an Asset Purchase Agreement with Morningstar. (Defs' Stmt ¶ 13; Pl's Res'g Stmt ¶ 13.) As listed in that agreement, the intellectual property assets sold to Plaintiff consisted of a single trademark and the licenses contained in the prior licensing agreement between Plaintiff and Morningstar "to the extent that it relates" to a single, different trademark. (Joseph Aff Ex G, Docket No. 71 at 13 (Schedule 2.18, filed under seal).)

In August 2012, Defendant Bluemke applied for a sales manager position with Defendant Darifair, and upon receiving an offer, he informed Plaintiff of his intention to leave. (Defs' Stmt ¶ 13; Pl's Res'g Stmt ¶ 13.) Plaintiff sent correspondence to both Bluemke and Darifair notifying each of Plaintiff's intent to enforce the confidentiality and non-compete provisions contained in the Confidentiality Agreement, and expressing the belief that it would not be possible for Bluemke to work for Darifair without violating these provisions. (Defs' Stmt ¶¶ 20-21; Pl's Res'g Stmt ¶ 20-21.)  Defendants disagreed, and Bluemke began his employment with Darifair.  (Compl Ex D.)

Plaintiff commenced the instant action in January 2013.  Seven causes of action are asserted in the Complaint: (1) intentional interference with contract against Defendant Darifair; (2) intentional interference with ongoing and prospective business relations against Defendant Darifair; (3) a claim for damages under a quantum meruit theory against Defendant Darifair; (4) unfair competition against both Defendants; (5) breach of contract against Defendant Bluemke; (6) breach of restrictive covenant against Defendant Bluemke; and (7) breach of fiduciary duty against Defendant Bluemke.  Following this Court's denial of Defendants' motion to dismiss the Complaint for lack of personal jurisdiction or transfer the action, the parties' filed their respective motions for summary judgment.  Plaintiff has moved for summary judgment in its favor with respect to only two causes of action, and does not oppose Defendants' motion to the extent it seeks dismissal of the second, third and sixth causes of action. (Pl's Mem in Opp'n at 2 n. 1, Docket No. 70.)

### III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such

issue warrant the entry of judgment for the moving party as a matter of law." <u>Kaytor v. Elec.</u> <u>Boat Corp.</u>, 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." <u>Kaytor</u>, 609 F.3d at 545 (citing <u>Anderson</u> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Anderson</u>, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003).  A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003). Further, where, as here, both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." <u>Morales v. Quintel Entm't</u>, 249 F.3d 115, 121 (2d Cir. 2001).

## A.  Breach of and Tortious Interference with the Confidentiality Agreement

Plaintiff argues that it is entitled to partial summary judgment with respect to its fifth cause of action for Bluemke's breach of the Confidentiality Agreement and its first cause of action for Darifair's interference with that agreement.  Plaintiff argues that resolution of these claims, as well as its causes of action for breach of fiduciary duty and unfair competition, "turn on the question of whether or not – when [Plaintiff] acquired the Cream Products' confidential information – it obtained a protectable interest in that information." (Pl's Mem in Opp'n at 2-3.)  At issue is the "confidential/proprietary information of Cream

4

Products Inc., and/or Ultra Products ('hereinafter 'the Cream Products') that were previously owned by Defendant Bluemke's family and acquired by [Plaintiff] through Morningstar Foods, Inc." (Pl's Mem of Law at 2, Docket No. 54-6.) Plaintiff asserts that this confidential information encompasses "methods, know-how, formula, compositions, processes and discoveries, methods of manufacture and specification" that had been the subject of a 1998 licensing agreement between Plaintiff and Morningstar. (Retelny Aff ¶¶ 9, 13 Ex A, Docket Nos. 54-4, 55.)

With respect to the breach of contract claim, Plaintiff asserts that:

> given [Plaintiff's] indisputable ownership of this intellectual property and its protection under the Confidentiality Agreement . . . , the Court can easily determine that there has been a breach of the contract as to the "Cream Products' confidential proprietary information by reason of Defendants' position that they are free to use and disclose this confidential technical information for which Rich Products paid million of dollars.

(Pl's Mem of Law at 12-13.)

Initially, Plaintiff's assertion of "indisputable ownership" turns on its interpretation of the Confidentiality Agreement as encompassing Cream Products proprietary information of which Bluemke had knowledge prior to his employment, but which was subsequently purchased by Plaintiff. (Pl's Mem in Opp'n at 4.) Defendants dispute this interpretation, arguing that interpreting the Confidentiality Agreement to include industry knowledge and information that was not obtained by Bluemke "during the course of [his] employment" with Plaintiff would be impermissibly overbroad. (Defs' Mem in Opp'n at 17-18, Docket no. 62.)

Defendants further argue that, in any event, resolution of this contractual interpretation issue is unnecessary in order to resolve the current motions, and this Court agrees. "It is well settled that the elements of a breach of contract cause of action are 'the

existence of a contract, the plaintiff's performance under the contract, *the defendant's breach of that contract*, and resulting damages' " Resetarits Const. Corp. v. Olmsted, 118 A.D.3d 1454, 1455, 988 N.Y.S.2d 797 (N.Y.A.D. 4th Dep't 2014)(quoting Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc., 111 A.D.3d 1374, 1376, 975 N.Y.S.2d 280 (N.Y.A.D. 4th Dep't 2013), *lv denied*, 22 N.Y.3d 864 (2014) (emphasis added)).[1]  Similarly, a claim for tortious interference with contract cannot stand absent an actual contractual breach. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424-25, 668 N.E.2d 1370 (1996); NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 620-21, 664 N.E.2d 492 (1996).

Here, Defendants rely on the deposition testimony of Plaintiff's representatives who testified that they had no knowledge that Darifair had become privy to any confidential or proprietary knowledge belonging to Plaintiff. (Ferranti Dep at 50-52, Docket No. 65-1 at 22-24; Retelny Dep at 35-36, Docket No. 65-1 at 101-02; Burke Dep at 51-53, Docket No. 65-1 at 50-52.) In other words, Plaintiff has no evidence that there has in fact been a breach of the Confidentiality Agreement regardless of how that document is interpreted. Defendant Bluemke further avers that:

> I have not had any communications or discussions with Darifair pertaining to any technology I learned before I joined or during the course of my employment with Rich Products.  Darifair did not ask me and I did not disclose any technology or confidential information that I acquired before I joined or during the course of my employment with Rich Products.

(Bluemke Aff ¶ 10, Docket No. 65-1 at 38 (emphasis added).)

Plaintiff neither disputes nor addresses Defendants' argument that there is no

---

[1] The parties do not dispute that New York law controls in this diversity action. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

evidence of an actual breach of the confidentiality agreement, but instead relies on Bluemke's perceived *intent* to breach the confidentiality agreement and his purported ability to do so.  (Pl's Mem of Law at 13; Pl's Mem in Opp'n at 11-12; <u>see</u> Retelny Aff ¶¶ 16-17, Docket No. 54-4; Retelny Dep at 29-30, Docket No. 61 at 16-17; Retelny Dep at 35-36, Docket No. 61 at 19-20; Burke Dep at 44-45, Docket No. 61 at 64-65.)   What Plaintiff is therefore describing, albeit unclearly, is at best an anticipatory breach (or anticipatory repudiation) of contract, which is actionable when "a party has indicated an unequivocal intent to forego performance of his obligations under a contract." <u>Rachmani Corp. v. 9 East 96th Street Apt. Corp.</u>, 211 A.D.2d 262, 266, 629 N.Y.S.2d 382 (N.Y.A.D. 1st Dep't 1995). Even assuming arguendo that such liability would be applicable here, a conclusion this Court does not reach, such a theory has not been clearly stated, and it cannot be concluded that Defendant had an opportunity to appropriately respond to such an argument. Summary judgment in Plaintiff's favor under an anticipatory breach theory would therefore be inappropriate.

Finally, because Plaintiff does not dispute that there is no evidence of an *actual* breach of the Confidentiality Agreement, Defendants have established their entitlement to summary judgment on both the breach of contract and tortious interference with contract claims regardless of how the Confidentiality Agreement is interpreted.  <u>NBT Bancorp Inc.</u>, 87 N.Y.2d at 620-21; <u>Resetarits Const. Corp.</u>, 118 A.D.3d at 1454; <u>see</u> <u>Aetna Cas. & Sur. Co. v. Aniero Concret Co.</u>, 404 F.3d 566, 589 (2d Cir. 2005).

## B.     Breach of Fiduciary Duty

The seventh cause of action alleges that Defendant Bluemke breached his fiduciary duty and duty of loyalty to Plaintiff.  A breach of fiduciary duty or loyalty may occur as a

7

result of an employee's misappropriation of an employer's confidential information. <u>Poller v. BioScrip, Inc.</u>, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013); <u>Chemfab Corp. v. Interated Liner Tech.</u>, 263 A.D.2d 788, 789, 693 N.Y.S.2d 752 (N.Y.A.D. 3d Dep't 752). Nonetheless, in addition to the existence of a fiduciary relationship, a viable claim requires a showing of misconduct by the defendant and damages resulting from the defendant's misconduct. <u>McGuire v. Huntress</u>, 83 A.D.3d 1418, 1420, 920 N.Y.S.2d 531 (N.Y.A.D. 4th Dep't 2011), *lv denied*, 85 A.D.3d 1657 (2011).   Because Plaintiff does not dispute Defendant's contention that there is no evidence that Bluemke has <u>in fact</u> disclosed or misappropriated any claimed proprietary and confidential information, Defendants are entitled to summary judgment on the seventh cause of action.

## C.    Unfair Competition

The misappropriation of confidential information may also form the basis of an unfair competition claim.  <u>See generally</u> <u>Redf Organic Recovery v. Rainbow Disposal Co.</u>, 116 A.D.3d 621, 622, 985 N.Y.S.2d 10 (N.Y.A.D. 1st Dep't 2014) (a valid unfair competition claim requires a showing that a defendant acted in bad faith in misappropriating a commercial advantage belonging to plaintiff). Defendants are correct that the absence of evidence that any of Plaintiff's confidential information – "Cream Products" or otherwise – has in fact been disclosed by Defendant Bluemke and used by Defendant Darifair warrants summary judgment in Defendants' favor. (Def's Mem at 23-24).

## D.    Declaratory Judgment

To the extent that Plaintiff is implicitly requesting a declaratory judgment with respect to its interpretation of the Confidentiality Agreement, in addition to its express request for

a permanent injunction, that request is denied.   Generally, in determining whether declaratory judgment is appropriate, a court should consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 105 (2d Cir. 2012) (internal quotation marks omitted).   As explained above, even if the Confidentiality Agreement is interpreted as Plaintiff requests, dismissal of the Complaint is unwarranted. Further, the parties dispute whether the "Cream Products" proprietary information at issue has been sufficiently defined. (Defs' Mem in Opp'n at 5-6; Retelny Aff ¶ 9; Pl's Reply Mem of Law at 7 n. 3.) To that end, Plaintiff asserts that the "Cream Products" proprietary information is included in"the intellectual property and confidential information previously licensed by [Plaintiff] under the [1998] Licensing Agreement," (Pl's Mem in Opp'n at 7; Retelny Aff ¶ 9); however, the actual intellectual property licenses incorporated into the asset agreement are only those related to a single named trademark and are not further defined.  (Joseph Aff Ex G, Docket No. 71 at 13 (Schedule 2.18, filed under seal).)  For this Court to be able to render a ruling that would actually "finalize the controversy and offer relief from uncertainty," more specific information regarding the confidential information at issue would be required.  Niagara Mohawk Power Corp., 673 F.3d at 105.

## IV. CONCLUSION

Plaintiff failed to establish its entitlement to summary judgment with respect to the breach of contract and intentional interference with contract, and its motion is therefore denied.  Further, because Plaintiff failed to raise a triable issue of fact in opposition to Defendants' showing that there has in fact been no disclosure or misappropriation of

confidential or proprietary information, Defendants' motion for summary judgment dismissing the Complaint is granted.

## V.  ORDERS

IT HEREBY IS ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 54) is DENIED;

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 64) is GRANTED and the Complaint is dismissed;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated:  January 10, 2015
        Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court